UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALBERTO ALEJANDRO SOLANO CORTEZ,<br><br>        Plaintiff,<br><br>    v.<br><br>JEFFERSON BEAUREGARD SESSIONS, et al.,<br><br>        Defendants. | Case No. 18-cv-01014-DMR<br><br>**ORDER ON PETITION FOR WRIT OF HABEAS CORPUS AND MOTION FOR TEMPORARY RESTRAINING ORDER**<br><br>Re: Dkt. Nos. 1, 2 |

Petitioner Alberto Solano Cortez is a noncitizen from Mexico who is currently in Immigration and Customs Enforcement ("ICE") custody pending the conclusion of his removal proceedings. On February 15, 2018, Mr. Solano filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 in which he asks the court to order his release from custody or to direct the United States Department of Justice Executive Office for Immigration Review ("EOIR") to provide him with an individualized custody hearing.[1] [Docket No. 1.] On February 16, 2018, Mr. Solano filed a motion for a temporary restraining order ("TRO") seeking to enjoin his continued detention without a custody hearing until the court decides his habeas petition. [Docket No. 2.]

Upon completion of the briefing on the motion for a TRO, the court ordered the parties to provide supplemental briefing to address the impact of the Supreme Court's February 27, 2018 decision in *Jennings v. Rodriguez*, 138 S. Ct. 830 (2018). [Docket No. 13.] The parties timely filed the requested briefing. [Docket Nos. 14-16.] This matter is suitable for resolution without a hearing. Civ. L.R. 7-1(b). For the following reasons, the petition is granted in part and denied in part. The motion for a TRO is denied as moot.

---

[1] Individualized custody hearings are also known as bond hearings. These terms are used interchangeably.

## I. BACKGROUND

Mr. Solano was born in Mexico and is 22 years old. His family brought him to the United States when he was two years old. [Docket No. 1-1 Ex. B (Solano Decl., Jan. 26, 2018) ¶ 1.] Mr. Solano grew up in the United States and attended school here. *Id.* at ¶ 9. In 2013, shortly after he turned 18, he was arrested and charged with robbery. He pleaded no contest and was sentenced to four years in prison. *Id.* at ¶¶ 13-19.

On August 14, 2017, after completing his prison sentence, Mr. Solano was transferred from criminal custody to the custody of the Department of Homeland Security ("DHS"). [Docket No. 1-1 Ex. A (Whitfield Decl., Feb. 15, 2018) ¶ 2.] On August 15, 2017, DHS served him with a Notice of Intent to Issue a Final Administrative Removal Order, noting that he had entered the United States "without admission or inspection by an immigration official" and was "not lawfully admitted for permanent residence." [Docket No. 1-1 Ex. C.] DHS issued a Final Administrative Removal Order on the same day. *Id.*

While in custody, Mr. Solano expressed his fear of returning to Mexico due to threats of violence against him and his family by other family members. Solano Decl. ¶¶ 2-7. Following an interview, an asylum officer found that Mr. Solano had a reasonable fear of torture if he returned to Mexico and referred the case to an immigration judge so that Mr. Solano could apply for withholding of removal and relief under the Convention Against Torture. [Docket No. 1-1 Ex. D; Whitfield Decl. ¶ 3.] Mr. Solano was then placed in withholding-only proceedings. A hearing on the merits of his claim was scheduled for February 12, 2018. [Docket 8-1 (Olympia Decl., Feb. 20, 2018) ¶ 6, Ex. E; Whitfield Decl. ¶ 3.] On November 9, 2017, ICE determined that Mr. Solano would continue to be detained during the pendency of his withholding-only proceedings. Olympia Decl. ¶ 7, Ex. F.

On December 11, 2017, after being detained for nearly four months, Mr. Solano filed a request for a ruling on his eligibility for a bond hearing. Whitfield Decl. ¶ 6. Immigration Judge ("IJ") Joseph Park denied the request on December 14, 2017, stating that the "issue [was] not ripe." [Docket No. 1-1 Ex. E.] On January 12, 2018, Mr. Solano moved for a bond hearing to be set on or around February 12, 2018, immediately after he would reach six months in custody,

pursuant to *Rodriguez v. Robbins* ("*Rodriguez III*"), 804 F.3d 1060 (9th Cir. 2015), *reversed by Jennings v. Rodriguez*, 138 S. Ct. 830 (2018), and *Diouf v. Napolitano* ("*Diouf II*"), 634 F.3d 1081 (9th Cir. 2011). Whitfield Decl. ¶ 7; Petition ¶ 5. The IJ denied the motion on January 25, 2018 on the ground that the "[court] lacks jurisdiction over custody as respondent [is] in withholding only proceedings." [Docket No. 1-1 Ex. F.] On January 30, 2018, Mr. Solano appealed the IJ's decision denying a custody hearing to the Board of Immigration Appeals ("BIA"). [Docket No. 1-1 Ex. G.] As of the February 15, 2018 filing date of Mr. Solano's habeas petition, the BIA had not yet set a briefing schedule. Whitfield Decl. ¶ 12.

At the February 12, 2018 merits hearing regarding withholding of removal, Mr. Solano moved again for a bond hearing, which the IJ denied. [Docket No. 1-1 Ex. I.] The IJ continued the merits hearing to take additional evidence and testimony; the next hearing date is set for June 5, 2018. [Docket No. 1-1 Ex. J; Whitfield Decl. ¶ 14.] Mr. Solano has been detained in ICE custody for over seven months without a bond hearing, since August 14, 2017. He remains in detention at the Yuba County Jail in Marysville, California. Petition ¶ 1.

Mr. Solano now petitions for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, asserting that his continued detention without a bond hearing is unlawful and in violation of his due process rights. In his petition and motion for a TRO, he seeks to enjoin his continued detention by DHS without a bond hearing, and to secure his release from custody in advance of his June 5, 2018 merits hearing. Mr. Solano asks that the court order either his immediate release from custody, or direct the EOIR to provide him with an individualized bond hearing at which the government bears the burden of justifying his continued detention by clear and convincing evidence.

Respondents oppose the petition and the motion for a TRO, and ask the court to resolve Mr. Solano's habeas petition on the merits. [Docket No. 8 (Opp'n) 14.] They argue that the petition should be denied for two reasons: 1) Mr. Solano has failed to exhaust his administrative remedies; and 2) Mr. Solano is not entitled to a bond hearing under applicable law.

3

## II. PETITION FOR WRIT OF HABEAS CORPUS

### A. Administrative Exhaustion

Respondents argue that the court should dismiss Mr. Solano's habeas petition because he has not exhausted his administrative remedies before the BIA. As noted, Mr. Solano's appeal to the BIA of the IJ's January 25, 2018 decision that Mr. Solano is not entitled to a bond hearing remains pending.

Under 28 U.S.C. § 2241(c)(3), a federal district court is authorized to grant a writ of habeas corpus when a petitioner is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). The Ninth Circuit "require[s], as a prudential matter, that habeas petitioners exhaust available judicial and administrative remedies before seeking relief under § 2241." *Castro-Cortez v. I.N.S.*, 239 F.3d 1037, 1047 (9th Cir. 2001), *abrogated on other grounds by Fernandez-Vargas v. Gonzales*, 548 U.S. 30 (2006); *see also Rojas-Garcia v. Ashcroft*, 339 F.3d 814, 819 (9th Cir. 2003) (a "petitioner must exhaust administrative remedies before raising the constitutional claims in a habeas petition when those claims are reviewable by the BIA on appeal"). Courts may require prudential exhaustion when:

> (1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review.

*Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017) (quoting *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007) (citations omitted)). However, "even if the three *Puga* factors weigh in favor of prudential exhaustion, a court may waive the prudential exhaustion requirement if 'administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void.'" *Hernandez*, 872 F.3d at 988 (quoting *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004) (citation and quotation marks omitted)).

Mr. Solano argues that awaiting the outcome of his BIA appeal is not efficacious, given the associated delays. As of the date of his reply brief, the BIA had not yet set a briefing or hearing schedule, and such appeals "often take four months or more" to adjudicate. Petition ¶ 25. Mr.

Solano contends that awaiting the outcome of his BIA appeal would cause him irreparable harm, because "[t]he BIA's indefinite timeline in deciding [his] appeal will compound the constitutional violation and constitute an even greater prejudice to [him]," given his contention that he is entitled to a custody hearing or immediate release. Petition ¶ 26. Mr. Solano further asserts that being forced to proceed with his application for immigration relief while detained is prejudicial to his case. He cites a study showing that represented noncitizens in the San Francisco Immigration Court who remain detained throughout removal proceedings are less than half as likely to be granted relief from deportation as similar individuals who are not detained at the time of their merits hearing. *Id*. at ¶ 28. He notes that detention makes it more difficult to meet with attorneys, collect evidence, and fully prepare for a merits hearing. *Id*. Finally, Mr. Solano asserts that he is suffering irreparable harm in the form of "the human cost of remaining detained in a county jail, far from his family and friends." Reply 4.

The court concludes that administrative exhaustion is not required in this case. Mr. Solano filed a BIA appeal that has not yet been set for briefing. The hearing on the merits of his claim for withholding of removal is scheduled for June 5, 2018, just over two months from now, and Mr. Solano asserts that the BIA appeal may take four months or longer to adjudicate, a timeline which Respondents do not dispute. Mr. Solano explains the substantial challenges in preparing for a merits hearing while in custody, and cites statistics which demonstrate that individuals in custody during removal proceedings are less likely to be granted relief from deportation. Again, Respondents do not address this point, thereby conceding it. The court finds that Mr. Solano "suffers potentially irreparable harm every day that he remains in custody without a hearing, which could ultimately result in his release from detention." *See Pulido v. Sessions*, No. C 17-03683 WHA, Docket No. 12, slip opinion 3-4 (N.D. Cal. Nov. 21, 2017) (waiving exhaustion requirement). In these circumstances, waiver of the administrative exhaustion requirement is appropriate. *See, e.g., Villalta v. Sessions*, No. 17-CV-05390-LHK, 2017 WL 4355182, at *3 (N.D. Cal. Oct 2, 2017) (quotation omitted); *Ramos v. Sessions*, No. 18-cv-00413-JST, 2018 WL 905922, at *3 (N.D. Cal. Feb. 15, 2018). Accordingly, the court concludes that administrative exhaustion is not required.

**B. Entitlement to a Bond Hearing**

**1. Detention of Noncitizens under the Immigration and Nationality Act**

The Immigration and Nationality Act ("INA") provides a "complex statutory framework of detention authority" codified at 8 U.S.C. §§ 1226 and 1231. *Prieto-Romero v. Clark*, 534 F.3d 1053, 1057 (9th Cir. 2008). Where a noncitizen falls within the statutory scheme "can affect whether his detention is mandatory or discretionary, as well as the kind of review process available to him if he wishes to contest the necessity of his detention." *Id*. In general, section 1226(a) governs detention during the pendency of a noncitizen's removal decision, and section 1231 governs detention following the issuance of a final removal order.

Section 1226(a) provides the Attorney General with discretionary authority to arrest and detain a noncitizen "pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a); *Prieto-Romero*, 534 F.3d at 1057. A noncitizen detained pursuant to section 1226(a) can appeal ICE's initial custody determination to an immigration judge, who is authorized to "release the alien, and determine the amount of bond, if any, under which the respondent may be released." 8 C.F.R. § 1236.1(d)(1); *see also* 8 C.F.R. § 1003.19(a) (granting immigration judges jurisdiction to review custody and bond determinations).

After a removal order becomes final, section 1231(a)(1)(A) provides that the "Attorney General shall remove the alien from the United States within a period of 90 days," known as the "removal period." 8 U.S.C. § 1231(a)(1)(A). "The purpose of the 90-day [removal] period is to afford the government a reasonable amount of time within which to make the travel, consular, and various other administrative arrangements that are necessary to secure removal." *Diouf v. Mukasey* ("*Diouf I*"), 542 F.3d 1222, 1231 (9th Cir. 2008). "The removal period begins on the latest of the date the order of removal becomes administratively final or, if the alien files a petition for review in the court of appeals and the court of appeals orders a stay of removal, the date of the court of appeals' final order upholding the order of removal." *Diouf II*, 634 F.3d at 1085; *see* 8 U.S.C. § 1231(a)(1)(B). Detention of the noncitizen is mandatory during the removal period. 8 U.S.C. § 1231(a)(2); *see Diouf II*, 634 F.3d at 1085.

Section 1231(a)(6) authorizes continued detention of noncitizens who are not removed

6

during the removal period. It provides that a noncitizen who "has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal . . . *may* be detained beyond the removal period." 8 U.S.C. § 1231(a)(6) (emphasis added). Detention following the 90-day removal period is not mandatory. *Id.*; *see also* 8 U.S.C. § 1231(a)(3) (describing possible conditions of supervision).

If a noncitizen expresses a fear of returning to the country designated in the final removal order, he or she will be referred to an asylum officer for a "reasonable fear determination" under 8 C.F.R. § 238.31. *See* 8 C.F.R. § 241.8(e). If the asylum officer determines that the noncitizen has a reasonable fear of persecution or torture, the matter is referred to an immigration judge for consideration of the request for withholding of removal. 8 C.F.R. § 208.31(e). In such "withholding-only" proceedings, the immigration judge may consider only whether a noncitizen is entitled to withholding of removal. 8 C.F.R. § 1208.2(c)(3)(i) ("The scope of review . . . shall be limited to a determination of whether the alien is eligible for withholding or deferral of removal."). During such proceedings, "all parties are prohibited from raising or considering any other issues, including but not limited to issues of admissibility, deportability, eligibility for waivers, and eligibility for any other form of relief." 8 C.F.R. § 1208.2(c)(3)(i).

### 2. Legal Framework

Since 2001, the Supreme Court and the Ninth Circuit have "grappled in piece-meal fashion with whether the various immigration detention statutes may authorize indefinite or prolonged detention of detainees and, if so, may do so without providing a bond hearing." *Rodriguez v. Hayes* ("*Rodriguez I*"), 591 F.3d 1105, 1114 (9th Cir. 2010). In *Zadvydas v. Davis*, 533 U.S. 678 (2001), the Supreme Court considered challenges to the prolonged detention of two noncitizens who were being held in the post-90-day removal period pursuant to section 1231(a)(6). The government had been unable to effectuate their removal because none of the available countries of removal were willing to accept them. *Id*. at 684-86. The Court held that section 1231(a)(6), "read in light of the Constitution's demands, limits an alien's post-removal period detention to a period reasonably necessary to bring about that alien's removal from the United States," and "does not permit indefinite detention." *Id*. at 689. The Court found that "[a] statute permitting indefinite

7

detention of an alien would raise a serious constitutional problem," given the Fifth Amendment's Due Process Clause, which "forbids the Government to depriv[e] any person . . . of . . . liberty . . . without due process of law." *Id*. at 690 (quotation omitted). Relying on the canon of constitutional avoidance, the Court held that "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id*. at 690, 699. Therefore, after a presumptively reasonable six-month period of post-removal period detention under section 1231(a)(6), a noncitizen is entitled to release if he or she "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id*. at 701.

Seven years after *Zadvydas*, the Ninth Circuit held that the "prolonged detention" of a noncitizen under section 1226(a) "without adequate procedural protections," such as access to a bond hearing before an immigration judge, "would raise serious constitutional concerns." *Casas-Castrillon v. Department of Homeland Security*, 535 F.3d 942, 950 (9th Cir. 2008). In *Casas-Castrillon*, a lawful permanent resident who had been detained for nearly seven years under sections 1226(c) and 1226(a) sought habeas relief while his petition for review of his removal order was pending. *Id*. at 945-48. Given the constitutional concerns, the Ninth Circuit construed section 1226(a) to require the government to provide a lawful permanent resident with "a neutral forum in which to contest the necessity of his continued detention," at which the government must establish that the individual poses a flight risk or a danger to the community in order to justify continued detention. *Id*. at 949, 951.

The Ninth Circuit later addressed the procedural requirements for bond hearings under *Casas-Castrillon* ("*Casas* hearings") in *Singh v. Holder*, 638 F.3d 1196 (9th Cir. 2011). In *Singh*, the court held that given "the substantial liberty interest at stake . . . the government must prove by clear and convincing evidence that an alien is a flight risk or a danger to the community to justify denial of bond at a *Casas* hearing." *Id*. at 1203.

In 2011, the Ninth Circuit in *Diouf II* extended the procedural protections established in *Casas-Castrillon* to noncitizens detained under section 1231(a)(6). 634 F.3d at 1086. The court found "no basis for withholding from aliens detained under § 1231(a)(6) the same procedural safeguards accorded to aliens detained under § 1226(a)," stating that "prolonged detention under §

8

1231(a)(6), without adequate procedural protections, would raise 'serious constitutional concerns.'" *Id.* (quoting *Casas-Castrillon*, 535 F.3d at 950). Applying the canon of constitutional avoidance, the Ninth Circuit construed section 1231(a)(6) "as requiring an individualized bond hearing, before an immigration judge, for aliens facing prolonged detention under that provision," and held that such individuals "are entitled to release on bond unless the government establishes that the alien is a flight risk or will be a danger to the community." *Id.* The court adopted a definition of "prolonged" detention as one that "has lasted six months and is expected to continue more than minimally beyond six months." *Id.* at 1092 n.13. The Ninth Circuit later held that noncitizens in withholding-only proceedings who are subject to final administrative orders are detained pursuant to section 1231(a), and not 1226(a). *Padilla-Ramirez v. Bible*, 882 F.3d 826, 832 (9th Cir. 2017).

The Ninth Circuit next considered the procedural protections available to noncitizens detained under 8 U.S.C. §§ 1225(b) and 1226(c) in *Rodriguez III*, decided in 2015. In *Rodriguez III*, a certified class of noncitizens challenged their prolonged detentions pursuant to 8 U.S.C. §§ 1225(b), 1226(a), 1226(c), and 1231(a) without the provision of individualized bond hearings.[2] 804 F.3d at 1065. Following the entry of a preliminary injunction, which was affirmed on appeal,

---

[2] 8 U.S.C. § 1225(b) "applies to 'applicants for admission' who are stopped at the border or a port of entry, or who are 'present in the United States' but 'ha[ve] not been admitted.'" *Rodriguez III*, 804 F.3d at 1081 (quoting 8 U.S.C. § 1225(a)(1)). "The statute provides that asylum seekers 'shall be detained pending a final determination of credible fear of persecution and, if found not to have such a fear, until removed.'" *Id.* (quoting 8 U.S.C. § 1225(b)(1)(B)(iii)(IV)). As to all other such applicants for admission, the statute provides for mandatory detention "if the examining immigration officer determines that [the individuals] seeking admission [are] not clearly and beyond a doubt entitled to be admitted." 8 U.S.C. § 1225(b)(2)(A).

8 U.S.C. § 1226(c) "requires that the Attorney General detain any non-citizen who is inadmissible or deportable because of his criminal history upon that person's release from imprisonment, pending proceedings to remove him from the United States." *Rodriguez III*, 804 F.3d at 1078, n.8. Detention under section 1226(c) is mandatory and individuals detained under that section may be released only if the government deems it "necessary" for witness protection purposes. *Id.* at 1078 (citing 8 U.S.C. § 1226(c)(2)).

As discussed above, 8 U.S.C. § 1226(a) provides that a noncitizen "may be arrested and detained pending a decision on whether the alien is to be removed from the United States."

8 U.S.C. § 1231(a) governs detention of noncitizens following issuance of a final removal order.

9

*see Rodriguez v. Robbins* ("*Rodriguez II*"), 715 F.3d 1127 (9th Cir. 2013), the district court granted summary judgment to the class and entered a permanent injunction requiring the government to provide a bond hearing to any class member subject to detention longer than six months. 804 F.3d at 1065. The government was ordered to provide each detainee with a bond hearing by his or her 195th day of detention, with such hearings occurring automatically after notice. *Id*. at 1072. The district court also required the government to prove by clear and convincing evidence that the detainee was a flight risk or a danger to the community in order to justify the denial of bond. *Id*. at 1071. The district court declined to order other procedural requirements requested by the class. *Id*. The government appealed from the entry of the permanent injunction, and the class cross-appealed the district court's order as to the procedural requirements for bond hearings. *Id*. at 1072-73.

      The Ninth Circuit affirmed in part and reversed in part. In relevant part, the court affirmed summary judgment and the entry of the permanent injunction as to the section 1226(c), 1225(b), and 1226(a) subclasses. Relying on the canon of constitutional avoidance, the court construed sections 1225(b) and 1226(c) as imposing a six-month time limit on detention, after which the government may continue detention only under the authority of section 1226(a). *Id*. at 1079, 1082. The court re-affirmed its decision in *Casas-Castrillon* that a noncitizen "subjected to prolonged detention under § 1226(a) is entitled to a hearing to establish whether continued detention is necessary because he would pose a danger to the community or a flight risk upon release." *Id*. at 1085 (citing *Casas-Catrillon*, 535 F.3d at 949-52). The court thereby affirmed the district court's permanent injunction requiring the government to hold bond hearings every six months for noncitizens detained pursuant to sections 1226(c), 1225(b), and 1226(a). *Id*. at 1090. However, the Ninth Circuit reversed summary judgment as to the section 1231(a) subclass, defined in relevant part as "non-citizens who are detained 'pending completion of removal proceedings, including judicial review,'" on the ground that the subclass did not exist. *Id*. at 1086. Specifically, the subclass by definition excluded any detainee subject to a final order of removal, and included individuals who had received a stay of removal from the BIA or a court. In such circumstances, the order of removal is not yet administratively final or subject to "the court's final

order," and therefore section 1231(a) is inapplicable because it applies to noncitizens subject to final removal orders. *Id*. at 1086 (citing 8 U.S.C. §§ 1231(a)(1)(B)(i), 1231(a)(1)(B)(ii)). Such individuals are instead detained pursuant to section 1226(a). *Id*. at 1086 n.15. The court also affirmed the requirement that the government "prove by clear and convincing evidence that an alien is a flight risk or a danger to the community to justify denial of bond at a *Casas* hearing." *Id*. at 1087 (quoting *Rodriguez II*, 715 F.3d at 1135 (quoting *Singh*, 638 F.3d at 1203)).

The Supreme Court reversed *Rodriguez III* in *Jennings*. The Court found that the Ninth Circuit had misapplied the canon of constitutional avoidance as to sections 1225(b), 1226(c), and 1226(a), finding that "its interpretations of the three provisions at issue . . . are implausible." 138 S. Ct. at 842. As to section 1225(b), which "applies primarily to aliens seeking entry into the United States," the Court noted that the statute divides applicants into two categories: section 1225(b)(1) provides that certain noncitizens claiming a credible fear of persecution "*shall* be detained for further consideration of the application for asylum," while section 1225(b)(2) provides that noncitizens who fall within the scope of that provision "*shall* be detained for a [removal] proceeding." *Id*. (emphasis added) (quoting 8 U.S.C. §§ 1225(b)(1)(B)(ii), 1225(b)(2)(A)). The Court found that "[r]ead most naturally, §§ 1225(b)(1) and (b)(2) mandate detention of applicants for admission until certain proceedings have concluded." *Id*. The Court rejected the argument that those provisions contain an implicit six-month limit on the length of detention, observing that "nothing in the statutory text imposes any limit on the length of detention" or "even hints that those provisions restrict detention after six months." *Id.* at 842, 843. As to the canon of constitutional avoidance, the Court held that "[s]potting a constitutional issue does not give a court the authority to rewrite a statute as it pleases . . . [i]nstead, the canon permits a court to 'choos[e] between competing plausible interpretations of a statutory text." *Id*. at 843. The Court concluded that sections 1225(b)(1) are 1225(b)(1) are not ambiguous, and that "neither provision can reasonably be read to limit detention to six months." *Id*. at 843-844 (contrasting section 1225(b), which provides that noncitizens "shall be detained" for further proceedings, with section 1231(a)(6), which provides that noncitizens "may be detained" after the completion of the removal period).

11

Similarly, the Court held that section 1226(c), which applies to noncitizens already present in the United States, could not plausibly be construed to include an implicit six-month time limit on the length of mandatory detention. *Id*. at 846-47. As to section 1226(a), the Court noted that "[f]ederal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention." *Id*. at 847. The Court held that "[n]othing in § 1226(a)'s text . . . supports the imposition" of the procedural protections ordered by the Ninth Circuit—"namely, periodic bond hearings every six months in which the Attorney General must prove by clear and convincing evidence that the alien's continued detention is necessary." *Id*.

### 3. Application to Mr. Solano

The parties do not dispute that Mr. Solano is detained pursuant to the government's discretionary detention authority under section 1231(a)(6). *See* Opp'n 10. It is also undisputed that Mr. Solano has been in custody for over six months without having been afforded a bond hearing. As discussed above, under *Diouf II*, the government is required to provide noncitizens who are detained under section 1231(a)(6) with a bond hearing before an immigration judge after 180 days in custody. 634 F.3d at 1092. At such hearings, the government bears the burden of establishing by clear and convincing evidence that a noncitizen poses a risk of flight or a danger to the community in order to continue the detention. *Id*.; *Singh*, 638 F.3d at 1205. Respondents argue that Mr. Solano is not entitled to a bond hearing or release, arguing that the reasoning of *Diouf II* "has been undermined" by the Supreme Court's decision in *Jennings*. [Docket No. 15 (Resp'ts' Suppl. Br.) 2.]

As discussed above, the Court in *Jennings* reversed the Ninth Circuit's holdings in *Rodriguez III* that 8 U.S.C. §§ 1225(b) and 1226(c) contain implicit six-month limits on the length of detention pursuant to those provisions, and that noncitizens detained pursuant to 8 U.S.C. § 1226(a) are entitled to bond hearings every six months. 138 S. Ct. at 842-847. *Jennings* concluded that the Ninth Circuit had misapplied the canon of constitutional avoidance when construing sections 1225(b), 1226(c), and 1226(a).

However, *Jennings* did not address the Ninth Circuit's holding in *Diouf II* that noncitizens detained under section 1231(a)(6) are entitled to bond hearings after six months. *See Diouf II*, 634

12

F.3d at 1092. In fact, in the discussion of its earlier decision in *Zadvydas*, *Jennings* expressly contrasted sections 1225 and 1226 with section 1231(a)(6). The Court found that the Ninth Circuit had read *Zadvydas* "as essentially granting a license to graft a time limit onto the text of § 1225(b)," even though *Zadvydas* "provides no such authority." 138 S. Ct. at 843. The Court explained that *Zadvydas* addressed section 1231(a)(6), which provides that after the 90-day removal period has elapsed, "certain aliens '*may* be detained' while efforts to complete removal continue." *Id*. (emphasis in original) (citing 8 U.S.C. § 1231(a)(6)). In *Zadvydas*, the Court construed section 1231(a)(6) "to mean that an alien who has been ordered removed may not be detained beyond 'a period reasonably necessary to secure removal,' and it further held that six months is a presumptively reasonable period." 138 S. Ct. at 843 (citing *Zadvydas*, 533 U.S. at 699, 701). *Zadvydas* grounded this interpretation based on "ambiguity in the statutory phrase 'may be detained,'" which it found "suggests discretion" but "not necessarily 'unlimited discretion.'" 138 S. Ct. at 843 (quoting *Zadvydas*, 533 U.S. at 697).

*Jennings* determined that the Ninth Circuit rested its erroneous reasoning on *Zadvydas*, which addressed section 1231(a)(6), and not sections 1225 and 1226. As discussed in *Jennings*, the Ninth Circuit applied *Zadvydas* to section 1225(b) without considering "the many ways in which the provision in question in *Zadvydas*, § 1231(a)(6), differs materially" from sections 1225(b)(1) and 1225(b)(2), precluding the Ninth Circuit's interpretation. 138 S. Ct. at 843. For example, *Jennings* noted that in contrast to the discretionary language used in section 1231(a)(6), the relevant provisions of section 1225(b) "unequivocally mandate that aliens falling within their scope 'shall' be detained," which "connotes a requirement." 138 S. Ct. at 844 (quotation omitted) (citing 8 U.S.C. §§ 1225(b)(1), 1225(b)(2)). Further, while observing that Congress "left the permissible length of detention under § 1231(a)(6) unclear," the Court found that sections 1225(b), 1226(c), and 1226(a) all provide that detention will end at a specified point. 138 S. Ct. at 844 (discussing when detention ends under sections 1225(b)(1) and 1225(b)(2)), 846 (noting that section 1226(c) "is not 'silent' as to the length of detention" but instead "mandates detention 'pending a decision on whether the alien is to be removed from the United States'" (citing 8 U.S.C. § 1226(a))). Finally, the Court noted that there are specific provisions authorizing release

13

from detention under sections 1225(b)(1) and 1225(b)(2), while section 1231(a)(6) contains no similar release provision. The Court held that the "express exception to detention [under section 1225(b)] implies that there are no other circumstances under which aliens detained under § 1225(b) may be released . . . preclud[ing] the sort of implicit time limit on detention that [the Court] found in *Zadvydas*." 138 S. Ct. at 844; *see also id*. at 847 (discussing release provisions in section 1226(c) which "impose[] an affirmative prohibition on releasing detained aliens under any other conditions.").

In concluding that "a series of textual signals distinguishes [sections 1225(b), 1226(c), and 1226(a)] from *Zadvydas*'s interpretation of section 1231(a)(6)," *Jennings* left in place the application of the canon of constitutional avoidance to section 1231(a)(6), the same provision at issue in *Diouf II*. As another court in this district recently held, the distinctions between section 1231(a)(6) and the statutes at issue in *Jennings*, "show at a minimum that *Jennings* left for another day the question of bond hearing eligibility under section 1231(a)(6)." *See Ramos v. Jennings* ("*Ramos II*"), No. 18-cv-00413-JST, 2018 WL 1317276, at *3 (N.D. Cal. Mar. 13, 2018) (holding that Jennings "left untouched the Ninth Circuit's requirement of [bond hearings every six months] for immigrants detained under section 1231(a)(6)."). In short, *Diouf II* remains good law which this court is bound to follow.

Respondents also argue that *Diouf II* does not govern the government's detention authority in this case. Opp'n 13-14; Resp'ts' Suppl. Br. 3. Respondents offer three reasons, all of which boil down to the argument that *Diouf II* is distinguishable because it did not address the circumstances of this case, namely, a noncitizen subject to a final removal order who is detained in withholding-only proceedings. Opp'n 11-12. First, Respondents assert that the petitioner in *Diouf II* could challenge his removal order, while Mr. Solano will remain subject to his final removal order even if his application for withholding of removal is granted. The second assertion is a variation on the first, in which Respondents note that unlike the petitioner in *Diouf II*, Mr. Solano has never sought judicial review of his final removal order, and the time to do so has passed. These two factual distinctions are of no import. The Ninth Circuit in *Diouf II* extended the right to a bond hearing to *all* noncitizens detained more than six months under section 1231(a)(6). The

14

court drew no distinction between certain classes of section 1231(a)(6) detainees, expressly noting that "[s]ection 1231(a)(6) encompasses aliens such as Diouf, whose collateral challenge to his removal order (a motion to reopen) is pending in the court of appeals, *as well as to aliens who have exhausted all direct and collateral review of their removal orders* but who, for one reason or another, have not yet been removed from the United States." *Diouf II*, 634 F.3d at 1085 (emphasis added). The Ninth Circuit found that all section 1231(a)(6) detainees face the same due process concerns during their detention. *Id*. at 1087. *Diouf II* therefore applies to all noncitizens detained under section 1231(a)(6).

Respondents also argue that unlike the petitioner in *Diouf II*, Mr. Solano has never held legal status in the United States, and the government has a different interest in detaining noncitizens "who have illegally entered the United States and committed aggravated felonies." Opp'n 11. As the court noted in *Diouf II*, the Supreme Court in *Zadvydas* "rejected the argument that § 1231(a)(6) detainees possess no liberty interest in freedom from civil detention merely because they lack a 'legal right' to live at large in the United States." 634 F.3d at 1087 n.8 (citing *Zadvydas*, 533 U.S. at 696). While the government indeed may have a different interest in detaining individuals such as Mr. Solano, Respondents do not explain how this justifies denying Mr. Solano a bond hearing, at which an immigration judge may consider the circumstances of his entry to the United States and criminal history in deciding whether he poses a flight risk or danger to the community. The government's interest in detaining Mr. Solano has no bearing on Mr. Solano's "important interest" in "freedom from prolonged detention." *See Diouf II*, 634 F.3d at 1087.

Finally, Respondents argue that applying *Diouf II* to noncitizens like Mr. Solano who are subject to final removal orders would conflict with the Supreme Court's decision in *Zadvydas*. According to Respondents, *Zadvydas*, and not *Diouf II*, controls this case, and in order to receive a bond hearing, Mr. Solano must show that "there is no significant likelihood of removal in the reasonably foreseeable future." Opp'n 13-14. This argument is not persuasive. In *Zadvydas*, the Supreme Court considered whether noncitizens may be detained indefinitely under section 1231(a)(6) pending removal from the United States. 533 U.S. at 689-90. The Court identified the

liberty interest at issue for such detainees and held that section 1231(a)(6) "does not permit indefinite detention," *id*. at 690, but did not address the question of bond hearings. The Ninth Circuit subsequently held that the liberty interest identified in *Zadvydas* "applies not only to indefinite detention, but also to *prolonged detention*" of six months. *Diouf II*, 634 F.3d at 1087 n.8, 1092 n.13 (emphasis added). It concluded that noncitizens detained under section 1231(a)(6) are entitled to bond hearings after six months if removal is not imminent. *Id.* at 1092, n.13. Therefore, under *Zadvydas*, detention under section 1231(a)(6) is presumptively valid for a period of six months. 533 U.S. at 701. After that period, under Ninth Circuit law, a noncitizen who is detained pursuant to section 1231(a)(6) is entitled to a bond hearing if removal is not imminent. *Diouf II*, 634 F.3d at 1092 n.13. There is no conflict between *Zadvydas* and *Diouf II*.

Moreover, there is no indication that Mr. Solano's removal is "imminent," given that the next hearing on his application for withholding of removal is scheduled for June 5, 2018, over two months from now. Accordingly, Mr. Solano is entitled to a bond hearing under *Diouf II*. *See, e.g., Villalta*, 2017 WL 4355182, at *7 (holding that noncitizen in withholding-only proceedings detained under section 1231(a)(6) is entitled to a bond hearing under *Diouf II*); *Ramos II*, 2018 WL 1317276, at *4 (same).

Respondents contend that even if *Diouf II* applies, this court should find that the "clear and convincing" evidence standard should not apply to any future bond hearing for Mr. Solano. They argue that *Jennings* "explicitly reversed" the imposition of such a procedural requirement. Resp'ts' Suppl. Br. 5-6. The court disagrees. As discussed above, the Ninth Circuit held in *Casas-Castrillon* that noncitizens detained under section 1226(a) are entitled to bond hearings ("*Casas* hearings"), and later applied this requirement to noncitizens detained under section 1231(a)(6) in *Diouf II*. *Casas-Castrillon*, 535 F.3d at 949; *Diouf II*, 634 F.3d at 1086. In *Singh*, the Ninth Circuit held that "the government must prove by clear and convincing evidence that an alien is a flight risk or a danger to the community to justify denial of bond at a *Casas* hearing." 638 F.3d at 1203. *Singh* observed that the "Supreme Court has repeatedly reaffirmed the principle that 'due process places a heightened burden of proof on the State in civil proceedings in which the 'individual interests at stake . . . are both particularly important and more substantial than mere

16

//

//

//

loss of money.'" *Id*. at 1204 (quoting *Cooper v. Oklahoma*, 517 U.S. 348, 363 (1996)). *See also Ramos II*, 2018 WL 1317276, at *4 (holding that clear and convincing evidence standard applies to bond hearings for noncitizens detained pursuant to section 1231(a)(6)).

*Jennings* held that the Ninth Circuit erred in construing section 1226(a), stating that "[n]othing in § 1226(a)'s text . . . supports the imposition" of the procedural protections ordered by the Ninth Circuit—"namely, periodic bond hearings every six months in which the Attorney General must prove by clear and convincing evidence that the alien's continued detention is necessary." 138 S. Ct. at 847. The Court did not engage in any discussion of the specific evidentiary standard applicable to bond hearings, and there is no indication that the Court was reversing the Ninth Circuit as to that particular issue. Accordingly, the court declines to find that *Jennings* reversed the clear and convincing evidence standard announced in *Singh* or later Ninth Circuit cases relying on *Singh*'s reasoning.

In conclusion, under applicable Ninth Circuit law, Mr. Solano is entitled to a bond hearing at which DHS must justify his continued detention by establishing by clear and convincing evidence that he is a flight risk or a danger to the community. Since the court has no basis to evaluate whether Mr. Solano is a flight risk or a danger to the community, Mr. Solano is not entitled to immediate release from ICE custody. That portion of his petition is denied.

**III.  TRO**

In his motion for a TRO, Mr. Solano seeks the same relief that he requests in his petition; namely, an order requiring the government to provide him with a bond hearing or immediate release from ICE custody. His motion for a TRO is therefore denied as moot.

**IV.  CONCLUSION**

For the foregoing reasons, Mr. Solano's petition for writ of habeas corpus under 28 U.S.C. § 2241 is granted in part and denied in part. Within 15 days of the date of this order, Mr. Solano must be provided with a bond hearing before an immigration judge. At that hearing, DHS must

17

establish by clear and convincing evidence that Mr. Solano is a flight risk or a danger to the community in order to continue his detention.

**IT IS SO ORDERED.**

Dated: March 27, 2018



Donna M. Ryu
United States Magistrate Judge